**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**VIVECA NOVAK**,

              Plaintiff,

      v.

**CENTRAL INTELLIGENCE AGENCY**,

          Defendant.

No. 23-cv-2989 (TSC)

---

**MEMORANDUM OPINION**

Plaintiff Viveca Novak filed a request under the Freedom of Information Act ("FOIA") to learn more about her mother's public service at the Central Intelligence Agency ("CIA") during the Cold War.  *See* Compl. ¶¶ 7–12, ECF No. 1.  The CIA produced some responsive records but withheld many others.  Plaintiff now challenges those withholdings, and both parties have moved for summary judgment.  For the reasons explained below, the court will GRANT in part and DENY in part the CIA's Motion for Summary Judgment, ECF No. 17, and DENY Plaintiff's Cross-Motion for Summary Judgment, ECF No. 19.  A separate order will follow.

**I.      BACKGROUND**

The CIA has officially acknowledged that Plaintiff's mother, Dagmar Stapleton, was employed by the agency during the Cold War.  Compl. ¶¶ 7, 9–10.  Plaintiff believes that her mother, a refugee from Czechoslovakia, "oversaw the Czech Desk for [the] CIA" and "took at least twenty overseas trips in the 1980s as part of her work."  *Id.* ¶ 8.  Plaintiff's mother retired from the agency in 1994 following the end of the Cold War and passed away in 2016.  *Id.* ¶ 10.

In March 2021, Plaintiff submitted a FOIA request to the CIA seeking "copies of all documents in" her mother's "personnel file." Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 1, ECF No. 18-1. In October 2023, having received "no substantive response" from the CIA, Plaintiff filed this FOIA suit. Compl. ¶ 15. The CIA subsequently searched for records and located 293 documents responsive to Plaintiff's request. Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 3; *see also* Williams Decl. ¶¶ 9–10, ECF No. 17-2. In January 2024, the CIA produced one document to Plaintiff in its entirety and 260 documents with redactions. Pl.'s Resp. to Def.'s Statement of Material Facts ¶¶ 4–8. It withheld 32 documents in full. *Id.* ¶ 9. To justify those withholdings, the CIA cited FOIA Exemption 1, which covers properly classified information; Exemption 3, which applies to information withheld pursuant to certain statutes, including the CIA Act of 1949; and Exemption 6, which covers personal information, the disclosure of which would constitute a clearly unwarranted invasion of privacy. *See generally* Williams Decl. – Ex. A (*Vaughn* Index), ECF No. 17-2.

Although Plaintiff did not dispute the adequacy of the CIA's search, she notified the CIA that "she was not satisfied" with the extent of its withholdings. Joint Status Report ¶¶ 3–4 (Jan. 31, 2025), ECF No. 15. In April 2025, the CIA moved for summary judgment, arguing that all its withholdings were proper. Def.'s Mot. for Summ. J., ECF No. 17 ("Def.'s MSJ"). In support of its motion, the CIA submitted a declaration from Mary Williams, "a senior CIA official" who serves as "the Litigation Information Review Officer for the Information Review and Release Division." Williams Decl. ¶¶ 1–2. Plaintiff then cross-moved for summary judgment. Pl.'s Cross-Mot. for Summ. J., ECF No. 19 ("Pl.'s C-MSJ"). She contends that she is entitled to release of the documents withheld under Exemption 1 because those documents are so old that they are subject to automatic declassification. *Id.* at 5–9. In the alternative, she asks the court to conduct *in camera*

review to evaluate whether the Agency's Exemption 1 withholdings were proper. *Id.* at 10–11. Plaintiff further contends that the CIA has failed to justify its withholdings under Exemptions 3 and 6. *Id.* at 12–18. In response to Plaintiff's cross-motion, the CIA submitted a supplemental declaration from Mary Williams stating, among other things, that the classified information at issue falls within an exception to automatic declassification. *See* Williams Suppl. Decl. ¶¶ 8–12, ECF No. 22-2.

## II.    LEGAL STANDARDS

"The Freedom of Information Act 'calls for broad disclosure of Government records.'" *ACLU v. Dep't of Def.*, 628 F.3d 612, 618 (D.C. Cir. 2011) (quoting *CIA v. Sims*, 471 U.S. 159, 166 (1985)). "Congress has recognized," however, "that 'public disclosure is not always in the public interest,' and has therefore provided . . . nine exemptions" to the government's disclosure obligations. *Id.* (quoting *Sims*, 471 U.S. at 167). The burden is on the agency to prove the applicability of the claimed exemption and, with respect to "all exemptions except Exemption 3," the agency must show that the withheld information both "falls within an exemption" and that "disclosure of that record would foreseeably harm an interest protected by the exemption." *Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024) (cleaned up). "Typically," the agency meets its burden "by affidavit." *ACLU*, 628 F.3d at 619; *see also Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) ("An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit[.]").

The court reviews the adequacy of the agency's justifications *de novo*. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "Yet in conducting *de novo* review in the context of national security concerns, courts 'must accord *substantial weight* to an agency's affidavit concerning the

details of the classified status of the disputed record.'" *Id.* (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)) (emphasis in original). That is because national security is "uniquely" within the Executive's "purview," *Larson*, 565 F.3d at 865, and "courts 'lack the expertise necessary to second-guess'" the Executive's national security judgments "in the typical national security FOIA case." *ACLU*, 628 F.3d at 619 (quoting *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by" contrary evidence or evidence of bad faith. *Larson*, 565 F.3d at 862 (quoting *Miller*, 730 F.2d at 776). "Ultimately, an agency's justification . . . is sufficient if it appears 'logical' or 'plausible.'" *Id.* (quoting *Wolf*, 473 F.3d at 374–75).

## III.    ANALYSIS

### A.  Exemption 1

The CIA invoked Exemption 1 with respect to 19 records withheld in full and 44 records withheld in part. Williams Suppl. Decl. ¶ 8. That Exemption authorizes the withholding of information "'properly classified pursuant to an Executive order'" setting forth criteria for classifying "national defense or foreign policy records." *DiBacco v. U.S. Army*, 795 F.3d 178, 196 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(1)). The parties agree that Executive Order 13,526 governs this case. *See* Def.'s MSJ at 4; Pl.'s C-MSJ at 5.

Under Executive Order 13,526, information may be classified if: (1) "an original classification authority"; (2) determines that the information's disclosure "could be expected to result in damage to the national security" that she "is able to identify or describe"; (3) "the information is owned by, produced by or for, or is under the control of the [U.S.] Government";

and (4) the information "pertains to" "intelligence activities[,] sources or methods," or certain other categories of information.  Exec. Order No. 13,526 §§ 1.1(a), 1.4, 75 Fed. Reg. 707, 707–09 (Dec. 29, 2009).  "When reviewing agency affidavits invoking Exemption 1," the court "simply consider[s] whether the agency has plausibly asserted that the matters are in fact properly classified pursuant to an executive order." *Schaerr v. U.S. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023).  And again, in the national security context, such affidavits are entitled to "substantial weight." *Wolf*, 473 F.3d at 374 (cleaned up).

The CIA has plausibly asserted that the information it withheld under Exemption 1 is properly classified pursuant to Executive Order 13,526.  To start, Mary Williams—an original classification authority—determined that the withheld information "is owned by" the Government and under its control.  Williams Decl. ¶¶ 2, 18.  She further stated that the withheld information "is currently and properly classified" as it "squarely concerns intelligence methods" "that are either still . . . in use or which remain viable for use." *Id.* ¶¶ 18–19.  Williams specified that the withheld information would disclose details about who the CIA "targets" for intelligence collection; the "activities," "means," "locations," and "sources" that the CIA uses for intelligence collection; and how the "CIA trains officers to accomplish [their] mission[s]." *Id.* ¶¶ 18–20.  Williams plausibly explained that if those targeting, collection, and training methods are disclosed, "their usefulness expires" as America's adversaries could deploy "countermeasures" that would render the Agency's methods ineffective. *Id.* ¶ 19.  Williams has thus adequately described the foreseeable harm to national security that would result from disclosure of this information, and the court is "in no position to dismiss the CIA's facially reasonable concerns." *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999).  "The assessment of harm to intelligence sources, methods and operations is entrusted to the Director of Central Intelligence, not to the courts." *Fitzgibbon v. CIA*, 911 F.2d

755, 766 (D.C. Cir. 1990); *see also Ctr. for Nat. Sec. Studies v. U.S. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review.").

        a.   Automatic Declassification

Plaintiff responds that all the records withheld under Exemption 1 are subject to automatic declassification and should therefore be disclosed. *See* Pl.'s C-MSJ at 5–6. It is true that all the records are more than 25 years old, and ordinarily, classified information "shall be automatically declassified" if it is "more than 25 years old" and has "been determined to have permanent historical value." Exec. Order No. 13,526 § 3.3(a), 75 Fed. Reg. at 714. But "an agency head may exempt from automatic declassification . . . the release of" records "which should clearly and demonstrably be expected to," among other things, "impair the effectiveness of an intelligence method currently in use, available for use, or under development." *Id.* § 3.3(b), 75 Fed. Reg. at 715.

In her Supplemental Declaration, Mary Williams clarified that the CIA relied on this exemption from automatic declassification because the withheld information, as noted above, "includes details regarding covert locations, collection and intelligence priorities, covert operations, targeting, and other details that would reveal" CIA methods still in use or still viable for use. Williams Suppl. Decl. ¶ 9; *see also* Williams Decl. ¶ 18–19. Williams reiterated that disclosure of such information would clearly and demonstrably be expected to impair the effectiveness of those methods because if a method is disclosed, America's adversaries can develop "countermeasures" against the method, thus rendering it ineffective. Williams Suppl. Decl. ¶ 9. "Clandestine intelligence collection methods are only effective so long as they remain

unknown and unsuspected." *Id.* Williams's declaration is entitled to substantial weight, and the court is satisfied that it logically explains that the withheld information remains classified despite its age.

Plaintiff points out that two of the records are more than 50 years old. *See* Pl.'s C-MSJ at 5–6; *see also* Williams Suppl. Decl. ¶ 8. And it is generally more difficult for the CIA to exempt information of that age from automatic declassification. *See* Exec. Order No. 13,526 § 3.3(h), 75 Fed. Reg. at 716 (mandating automatic declassification of classified records of historical value that are more than 50 years old except in narrow circumstances). But an agency head may specify categories of information that are exempt "from declassification at 50 years" if the Interagency Security Classification Appeals Panel ("ISCAP") approves those categories as exempt. *Id.* §§ 3.3(h), 3.3(j), 5.3(b), 75 Fed. Reg. at 716–17, 725. And in her Supplemental Declaration, Mary Williams explained that the two records at issue were properly exempt from automatic declassification at 50 years pursuant to the CIA's 2018 Declassification Guide, which has been approved by the ISCAP and exempts "sensitive information that could reveal an intelligence method in active use." Williams Suppl. Decl. ¶ 11. Williams further explained that the information contained in the two records older than 50 years "reveals details of methods currently used to support CIA's clandestine activities." *Id.* Specifically, both Documents C06920677 and C06920678 contain information regarding "intelligence sources and methods, intelligence targets and interests, and intelligence activities of the United States." Williams Decl. – Ex. A at 86, 87.

Plaintiff notes that these documents are both "one-page retirement records from 62 years ago" and questions how such records could "implicate methods of intelligence collection still in use." Pl.'s Reply at 4, ECF No. 23. But the CIA's justification survives scrutiny so long as it is plausible and not contradicted by contrary evidence or evidence of bad faith. *See Larson*, 565 F.3d

at 862.  And it is plausible that retirement records contain information about what a CIA employee did during their career, including the sources they worked with and the spy craft they engaged in. Moreover, the sources and methods used by the CIA in the past—even a half-century ago—could plausibly reveal details about the sources and methods used today, especially when closely analyzed by foreign intelligence agencies scouting for clues about how the CIA carries out its business.  *See Sims*, 471 U.S. at 178 ("Foreign intelligence services have . . . the substantial expertise in deducing [insights] from seemingly unimportant details."); *see also Wolf*, 473 F.3d at 377 ("The CIA has the right to assume that foreign intelligence agencies are zealous ferrets" and "that each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information." (cleaned up)).  The CIA's explanation is therefore plausible and Plaintiff's skepticism "does not overcome the 'substantial weight' the court must accord 'to [the] agency's affidavit.'"  *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (quoting *Mil. Audit Proj. v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

Plaintiff similarly questions whether other records redacted or withheld by the CIA actually contain information regarding intelligence methods.  *See* Pl.'s C-MSJ at 8–9.  She points to documents regarding Stapleton's "work performance," service record, and participation in training courses, and asks "how does an appraisal report of Ms. Stapleton's work performance implicate current intelligence sources and methods, or CIA personnel information?  How does a form authorizing a monetary award for Ms. Stapleton, a service record request, or a course completion certificate implicate [classified information]?"  Pl.'s C-MSJ at 16.  But again, it is logical that a work performance report would detail the work that Stapleton did on behalf of the CIA and who she worked with, which would plausibly reveal insights about how the CIA conducts intelligence operations.  Likewise, it is logical that course competition certificates and training evaluation

reports would contain details regarding "how [the] CIA trains officers to accomplish . . .

mission[s]," which necessarily sheds light on "the techniques and means by which an intelligence

agency accomplishes its mission."  Williams Decl. ¶ 19.  Plaintiff's attempts to cast doubt on the

plausibility of the CIA's explanations are therefore unpersuasive.

### b.  Sufficiency of Detail

Plaintiff next contends that the Williams Declaration and *Vaughn* index are "insufficiently

detailed and overly vague."  *See* Pl.'s Reply at 5; *see also* Pl.'s C-MSJ at 13–16.  True, an agency's

affidavit must "contain reasonable specificity of detail" such that it is sufficient to "demonstrate

that the withheld information logically falls within the claimed exemption."  *Larson*, 565 F.3d at

865.  And the D.C. Circuit has "consistently maintained that vague, conclusory affidavits" are

insufficient to enable judicial review.  *Church of Scientology v. Turner*, 662 F.2d 784, 787 (D.C.

Cir. 1980).  But in the context of classified national security information, the detail requirement is

more relaxed: "[T]he text of Exemption 1 itself suggests that little proof or explanation is required

beyond a plausible assertion that information is properly classified."  *Morley*, 508 F.3d at 1124.

The agency, moreover, "is not required to provide so much detail that the exempt material would

be effectively disclosed."  *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 82 F. Supp. 3d 307, 314 (D.D.C.

2015) (quoting *Johnson v. Exec. Off. for U.S. Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

To support her claim that the CIA's explanations are insufficiently detailed, Plaintiff argues

that the *Vaughn* entries for several documents are incomplete and describe only some of the

information withheld under Exemption 1.  She points to entries stating that Exemption 1 "was

asserted to protect information that is currently and properly classified subject to an Executive

Order, *including*" certain categories of information.  Pl.'s Reply at 3–4; *see generally* Williams

Decl. – Ex. A.  For example, Document C06920428 states that Exemption 1 was asserted to protect

classified information, "*including* intelligence sources and methods, intelligence targets and interests, and intelligence activities" and Document C06920520 states that Exemption 1 was asserted to protect classified information that "*includes* . . . intelligence sources and priorities, locations of covert facilities, targeting, collection capabilities and techniques, and covert operations." Williams Decl. – Ex. A Entries 82, 261. According to Plaintiff, the word "including" indicates a non-exhaustive list—the Agency has described only some of the information withheld, "without clarifying what the other information within these documents withheld under Exemption 1 concerns." Pl.'s Reply at 3. In context, however, the *Vaughn* index's use of the word "including" functions to specify the categories of classified information at issue in each document—not as a sign of incompleteness. This level of detail, moreover, is sufficient for the court to determine that the withheld information logically falls within Exemption 1.

       c.  <u>Segregability</u>

Finally, Plaintiff suggests that the CIA failed to meet its obligation to determine whether there was "any reasonably segregable information within the record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects." *Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024); *see also* Pl.'s C-MSJ at 11–12, 15 (making this argument). The court disagrees. An agency "is 'entitled to a presumption that it complied with the obligation to disclose reasonably segregable material.'" *Flyers Rts. Educ. Fund v. FAA*, 71 F.4th 1051, 1058 (D.C. Cir. 2023) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). "To rebut this presumption, the requester must offer, at least, evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* (cleaned up). In her declaration, Williams represented that "the CIA conducted a line-by-line review of each document and released all reasonably segregable, non-exempt information" and

that "there would be foreseeable harm in releasing any information that has been withheld."
Williams Decl. ¶ 30.  Plaintiff has "offered no . . . evidence" to the contrary and has thus "fail[ed]
to rebut the presumption" that the CIA has complied with its segregability obligations.  *Flyers Rts.*,
71 F.4th at 1058.

        d.  <u>*In Camera* Review</u>

Finally, Plaintiff urges the court to "conduct an *in camera* review of at least a sampling of
the documents" withheld by the Agency under Exemption 1.  Pl.'s C-MSJ at 11.  FOIA authorizes
"district courts . . . to conduct *in camera* review" but "does not compel the exercise of that option."
*ACLU*, 628 F.3d at 626.  *In camera* review is "particularly a last resort in national security
situations like this case—a court should not resort to it routinely on the theory that 'it can't hurt.'"
*Id.* (quoting *Larson*, 565 F.3d at 870).  "If the agency's affidavits 'provide specific information
sufficient to place the documents within the exemption category, if this information is not
contradicted in the record, and if there is no evidence in the record of agency bad faith, then
summary judgment is appropriate without in camera review of the documents."  *Larson*, 565 F.3d
at 870 (quoting *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).  That is the case here.
Because the CIA has met its burden with sufficiently detailed affidavits and there is no evidence
of bad faith, "*in camera* review is neither necessary nor appropriate."  *Hayden*, 608 F.2d at 1387.

\*   \*   \*

Although the court understands Plaintiff's desire for more information about her mother's
service to this nation, "[s]ecrecy is inherently a key to successful intelligence operations" and
"'[t]he Government has a compelling interest in protecting [that] secrecy.'"  *Sims*, 471 U.S. at 172
n.16, 175 (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)).  The CIA has adequately
justified its withholdings under Exemption 1 and demonstrated that it has released all reasonably

segregable information.   It is therefore entitled to summary judgment with respect to those withholdings.

### B.  Exemption 3

The CIA also withheld information under Exemption 3, which covers information "specifically exempted from disclosure by [a] statute" that qualifies as a statute "of exemption." 5 U.S.C. § 552(b)(3).  As the D.C. Circuit has repeatedly held, the CIA Act of 1949 qualifies as a statute "of exemption." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019).[1]  Under the Act, the CIA is exempt from disclosing "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." *Id.* (quoting 50 U.S.C. § 3507).  This exemption "does not cover only personnel records," but rather certain personnel information, "wherever that information may be found," and it extends to the information of current and former CIA employees alike.  *Id.* at 835.  To withhold information under the CIA Act, the Agency "need only show . . . that the withheld material falls within the statute."  *Larson*, 565 F.3d at 868.  Thus, "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents" of supporting declarations, and only on whether the withheld material logically falls within the scope of a statute of exemption.  *Morley*, 508 F.3d at 1126.  If the agency plausibly demonstrates that the withheld information qualifies, "the court should not conduct a more detailed inquiry."  *DiBacco*, 926 F.3d at 835 (quoting *Larson*, 565 F.3d at 865).

---

[1] The CIA also invoked the National Security Act to withhold information regarding intelligence sources and methods under Exemption 3.  Although the Act likewise qualifies as an Exemption 3 statute, *see DiBacco*, 926 F.3d at 834, the court need "not consider whether the [Agency] properly invoked Exemption 3" with respect to the National Security Act because the court has already determined that the CIA "has properly invoked Exemption 1" to withhold "the same information."  *Jarvik v. CIA*, 741 F. Supp. 2d 106, 120 n.10 (D.D.C. 2010).

The CIA has adequately demonstrated that its withholdings pursuant to the CIA Act were proper. In her declaration, Williams explained that the Agency "withheld officers' names, job titles, identification numbers, signatures, and other identifying information as well as information concerning CIA components that reveals Agency organization and functions." Williams Decl. ¶ 25. This is precisely the type of information that falls within the scope of the statute, and it is logical and plausible that Stapleton's personnel files—the subject of Plaintiff's FOIA request— would contain such information. To the extent Plaintiff requests that the court conduct *in camera* review of the CIA Act withholdings, *see* Pl.'s C-MSJ at 16, such review is "neither necessary nor appropriate" because the Williams Declaration and *Vaughn* index are sufficient to carry the agency's burden. *Hayden*, 608 F.2d at 1387. The CIA is therefore entitled to summary judgment with respect to its Exemption 3 withholdings.

### C. Exemption 6

Finally, the CIA has invoked Exemption 6 with respect to 35 documents[2] to withhold the personal information of third-party individuals, *i.e.*, individuals not employed by the CIA.[3] Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The D.C. Circuit has "read the statute to exempt not just [personnel and medical] files, but also bits of personal information, such as names and addresses, the release of which

---

[2] On page 6 of her supplemental declaration, Mary Williams states that the CIA invoked Exemption 6 with respect to only a single third party, but that is contradicted by the *Vaughn* index. *See* Williams Decl. – Ex. A, Entries 85, 166, 169, 170, 181, 203, 232, 234, 236, 239, 240, 248, 251, 262, 263, 264, 265, 266, 267, 268, 269, 270, 272, 274, 275, 276, 277, 278, 281, 283, 284, 285, 287, 289, 290.

[3] The CIA also invoked Exemption 6 to withhold the personal information of CIA employees, but Plaintiff does not challenge those withholdings and instead focuses only on the invocation of Exemption 6 with respect to third parties. *See* Pl.'s C-MSJ at 16–18; Pl.'s Reply at 7–8.

would 'create a palpable threat to privacy.'" *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Comm.*, 830 F.2d 388, 391 (D.C. Cir. 1987)); *see also Talbot v. U.S. Dep't of State*, 315 F. Supp. 3d 355, 365 (D.D.C. 2018) ("Exemption 6 covers all information which applies to a particular individual no matter the type of file it is contained in." (cleaned up)). Although the potential scope of the exemption has been construed "broadly," *Jud. Watch*, 449 F.3d at 152, the agency's burden to invoke the exemption is nevertheless "heavy." *Morley*, 508 F.3d at 1127 (quoting *Wash. Post Co. v. HHS*, 690 F.2d 252, 261 (D.C. Cir. 1982)). The CIA "must show that disclosure" of the personal information "would constitute a *clearly unwarranted* invasion of personal privacy." *Id.* (emphasis added). And the statute's use of the phrase "clearly unwarranted invasion of personal privacy" creates a "presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act." *Id.* (quoting *Wash. Post. Co.*, 690 F.2d at 261).

The CIA has failed to meet its burden. To start, when assessing whether privacy interests warrant withholding personal information, an agency must make "a reasonable effort to ascertain" whether the subjects of the personal information are still alive. *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003). After all, "the death of the subject of personal information . . . diminish[es] to some extent the privacy interest in that information." *Schrecker v. U.S. Dep't of Just.*, 254 F.3d 162, 166 (D.C. Cir. 2001). But here, the CIA has not made any real effort to determine whether the third parties involved are still alive. Instead, it says that it cannot do so because "the records at issue do not contain sufficient detail or additional identifying information (e.g., dates of birth) to allow the Agency to ascertain with any degree of certainty the named individuals' life status." Williams Suppl. Decl. ¶ 15. True, the reasonableness of the "Government's efforts must be assessed in light of the accessibility of the relevant information,"

*Schrecker*, 349 F.3d at 662, and the agency's assertion that there is no readily accessible information would ordinarily be entitled to weight. But the CIA's assertion is "contradicted by contrary evidence in the record." *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (cleaned up). Several entries in the *Vaughn* index indicate that the CIA has dates of birth for many of the third parties mentioned in the withheld records. *See* Williams Decl. – Ex. A, Entries 166, 169, 170, 234, 239, 240, 251.

Nor has the CIA adequately explained the privacy interests supposedly at stake. In her supplemental declaration, Williams vaguely asserted that if the personal information of the third parties is disclosed, their affiliation with the CIA would be "expos[ed]" and, as a result, they "*could* face unwanted contact or harassment by press" or foreign adversaries. Williams Suppl. Decl. ¶ 15 (emphasis added). But the *Vaughn* index indicates that many if not most of the third parties mentioned are relatives of Dagmar Stapleton, who the CIA has officially acknowledged as a former CIA employee. *See, e.g.*, Williams Decl. – Ex. A, Entries 166, 169, 170, 232, 234. The CIA does not appear to have considered whether these individuals have already effectively had their affiliation with the CIA made public by virtue of their relationship with a known former CIA employee. Moreover, the CIA's blanket assertion that all the third parties mentioned *could* be subject to harassment—without analysis of the nature and age of the third parties' affiliation with the CIA—lacks the "reasonable specificity of detail" required to plausibly demonstrate that there is a real, non-speculative risk of harassment. *Larson*, 565 F.3d at 865; *see also Jud. Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 142–43 (D.D.C. 2014) ("[T]he potential adverse consequences [of disclosure] must be real rather than speculative," and the risk "must be 'more palpable than mere possibilities.'" (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976))).

The CIA has therefore failed to carry its burden with respect to its Exemption 6 withholdings. However, Plaintiff has not demonstrated that this information is subject to disclosure as a matter of law. Therefore, the court will deny summary judgment to both parties with respect to the Exemption 6 withholdings and give the agency an opportunity to reassess those withholdings and submit additional affidavits if it again determines they were proper. *See Advancement Proj. v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 136 (D.D.C. 2021) ("[T]he agency may try again to justify whichever exemption it says is applicable.")

## IV.    CONCLUSION

For the reasons explained above, the court will GRANT the CIA's Motion for Summary Judgment with respect to Exemptions 1 and 3 and DENY without prejudice the CIA's Motion for Summary Judgment with respect to Exemption 6. The court will DENY Plaintiff's Cross-Motion for Summary Judgment, and that denial will be without prejudice with respect to Exemption 6. A separate order will follow.


Date: February 4, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge